## GARBUTT OIL CO. v. UNITED STATES.
### No. 8281.

Circuit Court of Appeals, Ninth Circuit.
April 28, 1937.

Claude I. Parker and Bayley Kohlmeier, both of Los Angeles, Cal., for appellant.

Robert H. Jackson, Asst. Atty. Gen., and Sewell Key, J. Louis Monarch, Harry Marselli, and Morgan V. Martin, Sp. Assts. to the Atty. Gen., and Peirson M. Hall, U. S. Atty., E. H. Mitchell, Sp. Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for the United States.

Before WILBUR and MATHEWS, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

This suit is to recover an overpayment of income taxes for the year ending 1919. The appellee pleaded the statute of limitations. Judgment was entered for the appellee March 10, 1936, and reversal is sought.

A trial by jury was waived and the court made findings of fact and conclusions, as required by statute, and found in substance that the appellant is a California corporation; that on October 3, 1907, it leased certain oil land and later oil was discovered thereon and thereafter appellant's sole business was the production and distribution of oil from this property. On April 10, 1911, appellant's board of directors adopted a resolution to the effect that all oil produced by it after January 1, 1911, should be assigned to appellant's lessors to the extent of their royalty interest and to appellant's stockholders to the extent of their holdings of stock "prorata in kind," so long as the stockholder should pay calls for money necessary to cover all expenses of appellant. All oil produced thereafter by the appellant from the date supra throughout the year 1919 was, pursuant to this arrangement, distributed in kind, respectively, to the lessors and the stockholders of appellant to the extent of their royalty and in proportion to their holdings of stock, respectively.

For the year 1919 appellant reported net income in the amount of $16,928.61 and a tax liability for the year of $2,072.68, which tax was, during 1920, paid. Thereafter the Commissioner of Internal Revenue for the proper district determined and assessed an additional tax of $3,105.65 against appellant for the year 1919. This tax appellant paid April 3, 1925.

On March 30, 1929, appellant filed with the collector of internal revenue for the proper district its claim for refund on Form 843 of income and excess profit taxes overpaid for the year 1919 in the amount of $3,105.65. The refund was claimed on the grounds (1) that appellant was entitled to an additional deduction for amortization of

the cost of a certain drilling contract, and (2) that its invested capital had been understated.

On May 31, 1929, before the March 30, 1929, refund application was determined, appellant filed a paper on oath with the collector of internal revenue, entitled, "Statement of Garbutt Oil Company * * * For the Purpose of Perfecting and Completing Claim for Refund Covering Alleged Overpayment of Income Tax for the Calendar Year 1919," and claimed refund for the following reasons:

"Reference is made to claim for refund in the amount of $3,105.65, filed by Garbutt Oil Company with principal place of business at Union Oil Building, Los Angeles, California, with the Collector for the Sixth District of California on or about March 29, 1929, covering over-payment of income tax alleged to have been made for the calendar year 1919. The claim was based upon the grounds that

"(a) The net income of the corporation was overstated to the extent of $12,500.00, because of the Commissioner's failure to allow a deduction for the amortization of the value of a certain contract entered into with the Union Oil Company of California, for which capital stock was issued having a par value of $250,000.00; and

"(b) That the invested capital as determined by the Commissioner was understated by reason of the Commissioner's failure to include therein any portion of the cost to the Company of the above-mentioned contract entered into with the Union Oil Company of California.

"It now develops that a further reason exists in support of said claim for refund which is as follows:

"Commencing with the year 1911 the arrangement entered into between the Garbutt Oil Company and the Union Oil Company of California, which owned 50% of said stock, was to the effect that the stockholders were to pay in to the company a sufficient amount to cover the operating expenses and they were to receive the oil produced by the company and sell it themselves. Under this arrangement the company received none of the proceeds derived from the sale of the oil, although it appears for bookkeeping purposes the oil was considered distributed to the stockholders at its market value when distributed and the difference between the expense of operation and the market value of the oil when distributed was accounted for as income to the Government.

"As a matter of fact, the Garbutt Oil Company distributed assets in kind to its stockholders and they were entitled to treat the property so received as a dividend, which under the income tax law and regulations they should have accounted for at the market value of the property, in this case consisting of crude oil at its market value when received.

"In this connection attention is called to statement appearing in recent letter from the Commissioner's office addressed to the Union Oil Company of California, setting forth the final adjustments made in its income and profits tax liability for the year 1918 and subsequent years. The particular statement in the Commissioner's letter to which attention is directed appears under Schedule 1–A, and is as follows:

" 'The Union Oil Company owning 50% of the stock of the Garbutt Oil Company received from it each year one-half of the oil produced and paid one-half of its expenses. As the Garbutt Oil Company is a domestic corporation subject to tax on its net income the value of the oil received by the Union Oil Company in excess of expenses paid is here treated as a dividend received.'

"In addition to the foregoing, it is further submitted that the Internal Revenue Bureau heretofore consistently had recognized the fact that under the Revenue Acts in force prior to the Revenue Act of 1928 (45 Stat. 791) a corporation realizes neither profit nor loss in the distribution of its assets to its stockholders.

"By eliminating the fictitious gross profits or appreciation taken up on the return of the Garbutt Oil Company for the year 1919, arising from the distribution of the oil produced in the manner hereinbefore explained, no taxable profit results, and it therefore follows that even though the specific grounds set forth in the claim for refund are denied said claim should, nevertheless, be allowed in full for the reasons herein set forth.

"It is therefore respectfully urged that the amount by which the Garbutt Oil Company has overpaid its correct tax liability for the year 1919, viz., $5,178.33, or so much thereof as is properly refundable within the statute of limitations, be refunded together with interest computed thereon as provided by existing law."

The trial court found that plaintiff (appellant) predicates its right to recover in this action upon the reasons set forth for the first time in the statement filed May 31, 1929, and also found that the Commissioner of Internal Revenue undertook to treat this supplemental statement as an amendment to the original claim and to consider it on its merits and wrote to the appellant August 12, 1929 that the claim could not be allowed, as follows:

"You further contend that inasmuch as the taxpayer entered into an agreement with its stockholders in 1911 for said stockholders to pay into the company sufficient funds to pay the expenses and the company was to turn over to the stockholders all the oil produced for them to sell, that the Garbutt Oil Company distributed to its stockholders assets in kind and that no taxable profit accrued to the taxpayer.

"This office holds that the distribution of oil in excess of the expenses contributed represents a distribution of profits which are taxable to the corporation."

The trial court also found that the claim of May 31, 1929, was not an amendment of its claim filed March 30, 1929, but constituted an abandonment of the said claim and the substitution of an entirely new claim; that plaintiff (appellant) was barred subsequent to April 3, 1929, from filing a claim for refund for taxes paid April 3, 1925, for the year 1919 (section 284(b) of the Revenue Act of 1926, 44 Stat. 66); and having abandoned its claim for refund filed March 30, 1929, could not thereafter file an entirely new claim. It was admitted at bar that the claim filed March 30, 1929, was abandoned at the trial of the case.

We think the trial court erred in holding that the claim filed on the 31st day of May, 1929, was a new claim and not an amendment to the claim filed on March 30, 1929. The amendment filed is germane to the original claim and asks for a refund of $5,178.33, whereas the first claim claimed a refund in the sum of $3,105.65. Both of these claims grew out of substantially the same facts and the claim had not been determined, the matter had not been adjudicated, and the same rules applied as in ordinary law actions. The fact that the first claim was abandoned at trial does not establish the fact it did not have sufficient vitality at the time the amendment was filed to support the same. The same question is presented in this case as was answered by the Supreme Court, through Justice Cardozo, in United States v. Memphis Cotton Oil Co., 288 U.S. 62–64, 53 S.Ct. 278, 279, 77 L.Ed. 619 [1]: "May a claim for a tax refund which has been seasonably filed, but which fails to state the grounds upon which the refund is demanded, be amended by specifying the grounds at any time before the claim in its original form has been finally rejected, though it be after the time when a wholly new claim would be barred by limitation?" On page 67 of 288 U.S., 53 S.Ct. 278, 280, 77 L.Ed. 619, supra: "Indefinite and general it was, and hence, until amended or supplemented, an inadequate compliance with the Treasury requirement that the facts relied upon in support of a claim are to be stated under oath. Beyond doubt it might have been rejected as irregular while its form was uncorrected. This is far from saying that there was the presentation of a new claim and not the perfecting of an old one when the gaps were filled thereafter."

In the instant case the application for refund was made in the proper form, but it stated a different ground for refund. Both grounds could have been consistently stated in the original claim. Undoubtedly the first claim could have been denied, and if so before the limitation had run, it would not have supported the amendment.

We think the judgment should be, and is, reversed.

1 Compare Bowers v. New York Trust Co., 9 F.(2d) 548 (C.C.A. 2); Reid v. Rafferty, 15 F.(2d) 264 (C.C.A. 2); United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633; Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265; United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626; Bemis Bro. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011.