332 F.Supp. 345 (1971)
G. A. BUDER, Jr., and Kathryn M. Buder, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 70 C 520(3).
United States District Court, E. D. Missouri, E. D.
September 22, 1971.
*346 G. A. Buder, Jr., and Richard O. Roberts, St. Louis, Mo., for plaintiffs.
Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., Michael C. Durney, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM
WEBSTER, District Judge.
This is an action for recovery of individual federal income taxes alleged to have been erroneously assessed and collected. Jurisdiction of the court is based on 28 U.S.C. § 1346(a) (1).
G. A. and Kathryn Buder, plaintiffs herein, timely filed a joint individual income tax return for the year 1965. Included within income reported by plaintiffs in this return was the sum of $26,072.75 representing dividends paid to the plaintiffs as shareholders in Lydiade Investment Trust, a Missouri corporation having the federal income tax status of a personal holding company. Of this sum, $7,567.25 represented a regular dividend and $18,496.50 represented *347 a deficiency dividend authorized by 26 U.S.C. § 547(a).
The case was submitted to the court upon the following stipulated facts:
1. The plaintiffs are stockholders in the Lydiade Investment Trust (Lydiade), a Missouri corporation which in the years in suit had the federal income tax status of a personal holding company.
2. Lydiade timely filed its corporate income tax returns for the years 1960 and 1961.
3. During the year 1964, the Commissioner of Internal Revenue proposed deficiencies in income tax against Lydiade for the years 1960 and 1961 due to the alleged omission of interest income from the returns filed, and in personal holding company tax, based upon resulting amounts of undistributed personal holding company income.
4. On October 8, 1964, Lydiade filed a Form 870 with the Internal Revenue Service, thereby waiving restrictions on assessment of the proposed deficiencies and consenting to deficiencies in the amount of $12,086.85 for 1960 and $21,577.10 for 1961. Lydiade was not in agreement with the deficiencies proposed by the Internal Revenue Service and filed the Form 870 agreement in order to expedite the filing of suit for refund after assessment and payment. The Form 870 was conditioned by Lydiade on the approval and execution by the Internal Revenue Service of a Form 2198, Determination of Liability for Personal Holding Company Tax. The Form 2198 was submitted by Lydiade so that Lydiade could take advantage of the deficiency dividends provisions of Section 547 of the Internal Revenue Code of 1954.
5. On January 23, 1965, Lydiade timely declared and paid deficiency dividends to its stockholders in the amounts of $10,800 for 1960 and $15,750 for 1961. Of the total deficiency dividends of $26,550 paid to the stockholders of Lydiade, the plaintiffs received $18,496.50.
6. Also during the year 1965, Lydiade paid its stockholders a $10,875 dividend unrelated to any deficiency in tax. This $10,875 dividend was claimed as a dividend paid deduction on Schedule PH of Lydiade's 1965 corporate income tax return. The dividend payments by Lydiade during the year 1965 in the total amount of $37,425, ($26,550 deficiency dividends plus $10,875 unrelated to any tax deficiency) did not exceed Lydiade's accumulated earnings and profits for the year 1965.
7. On January 29, 1965, Lydiade timely filed with the Internal Revenue Service a Form 976, Claim for Deficiency Dividend Deduction, claiming a deduction in the amount of $26,550 in accordance with Section 547(e) of the Internal Revenue Code of 1954.
8. After deducting the $26,550 deficiency dividends from the computation of Lydiade's personal holding company income, the Internal Revenue Service timely assessed deficiencies against Lydiade in the amounts of $3,542.81 for 1960 and $9,489.94 for 1961.
9. The assessments of $3,542.81 and $9,489.94 were paid by Lydiade and suit for refund of these amounts was timely filed on February 7, 1967 in the United States District Court for the Eastern District of Missouri, Eastern Division, styled Lydiade Investment Trust v. United States, 289 F.Supp. 507.
10. In Counts I and III of its Complaint, Lydiade sought recovery of $3,542.81 and $9,489.94 in tax and interest assessed and paid for the years 1960 and 1961 respectively, plus $26,550 representing the deficiency dividends declared and paid by the corporation to its stockholders on January 23, 1965.
11. The basis for recovery of the amounts sought in Counts I and III was that Lydiade did not omit any interest income from its 1960 and 1961 tax returns and that the subsequent deficiencies by the Internal Revenue Service based on interest income alleged to have been omitted were erroneous. Lydiade alleged that the amounts regarded by *348 the Internal Revenue Service as interest income to Lydiade were in fact a repayment to Lydiade by the Estate of G. A. Buder, deceased, of sums advanced to or paid for the account of said Estate during the years 1955 to 1959, inclusive, and thus did not constitute taxable income to Lydiade.
12. In Counts II and IV of its Complaint, advanced as alternatives if the relief sought under Counts I and III were denied by the Court, Lydiade prayed for orders granting refunds, by way of equitable recoupment, based upon the allowance of related interest deductions for the years 1955 to 1959, inclusive, which would have been deductible for such years under the Government's theory of the interest income issue but which had not been previously claimed or allowed.
13. Plaintiffs herein were not parties to the suit filed by Lydiade.
14. On August 1, 1968, in a Memorandum Opinion, Lydiade Investment Trust v. United States, 289 F.Supp. 507, pp. 512-513 (E.D.Mo., 1968), the District Court (Chief Judge Roy W. Harper) found for Lydiade on the grounds raised in Counts I and III of the Complaint, stating:
The court, therefore, holds that the funds repaid by the Estate in 1960 and 1961 do not constitute interest income to the plaintiff, and that it is entitled to a refund of $13,032.75, the total of the amounts paid to the District Director pursuant to the deficiency assessments for 1960 and 1961, with interest at six percent per annum from June 21, 1965, the date of payment. The plaintiff is not entitled to a refund for the amounts paid to its stockholders as deficiency dividends since it has paid no tax on these amounts. The government's brief concedes (p. 17) that "its shareholders would be entitled to a refund or abatement in the amount of income taxes paid, if any were paid, on the receipt of deficiency dividends in 1965."
In light of this disposition of the case, it will be unnecessary to consider the doctrine of equitable recoupment advanced as an alternative ground for recovery in separate counts of the plaintiff's complaint.
15. On January 15, 1969, Lydiade received payment from the United States in the amount of $15,803.91, representing the $13,032.75 judgment plus statutory interest, and a Satisfaction of Judgment was filed.
Plaintiffs contend that the District Court adopted defendant's statement that the shareholders of Lydiade Investment Trust "would be entitled to a refund or abatement in the amount of income taxes paid, if any, on the receipt of deficiency dividends in 1965" upon entering judgment in Lydiade Investment Trust v. United States, supra. They cite a number of cases standing for the proposition that a final judgment entered by a competent court is binding upon and bars subsequent litigation between the parties and their privies, even though that judgment may be based upon a misinterpretation of the law. This is a correct statement of the law. However, where a different cause of action is involved a judgment in a prior action operates as an estoppel against parties and their privies only on matters actually litigated and on issues which, of necessity, must have been determined in reaching the final result. Moreover, findings not necessary to support a prior judgment may be reexamined even though they were litigated in the earlier action. Exhibitors Poster Exchange, Inc. v. National Screen Service Corporation, 421 F.2d 1313 (5th Cir. 1970); Neaderland v. Commissioner of Internal Revenue, 424 F.2d 639 (2d Cir. 1970); Norton v. Larney, 266 U.S. 511 (1925); National Lead Co. v. Nulsen, 131 F.2d 51 (8th Cir. 1942), cert. denied, 318 U.S. 758, 63 S.Ct. 533, 87 L.Ed. 1131 (1943); Halpern v. Schwartz, 426 F.2d 102 (2d Cir. 1970); 1B Moore, Federal Practice ¶ 0.443[5] at 3919 (1965). There is no evidence before this court to indicate that the tax consequences to the *349 shareholders on receipt of the deficiency dividends were actually litigated before Judge Harper. Allusion in the court opinion to the statement in defendant's brief did not constitute an adjudication of the issue.
Even if it were to be assumed that the point was actually litigated in the earlier action, resolution of the question was not necessary to arrive at a decision upon whether the Lydiade Investment Trust omitted interest income from its 1960 and 1961 tax returns. The court finds that the decision rendered in Lydiade Investment Trust v. United States does not preclude defendant from litigating the tax consequences of the 1965 deficiency dividends in this action.
Plaintiffs maintain that even if the question of the tax consequences of the 1965 deficiency dividends is not res judicata, or sufficient to bar this action by collateral estoppel, the Government should not be permitted to assert a position before this court which is contradictory to the argument it presented in the earlier suit. Plaintiffs cite four cases in support of this contention:
In Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895), the United States Supreme Court held that where Davis had defeated a claim by Wakelee in an earlier proceeding by relying on the existence of a judgment which Wakelee had obtained against him, Davis could not in a subsequent hearing deny the validity of the judgment due to lack of personal service.
United States v. Katz Drug Co., 150 F.2d 681 (8th Cir. 1945) was a condemnation proceeding in which the Eighth Circuit Court of Appeals held that the Federal Government could not accept the benefit of an earlier court ruling for the purpose of paying less compensation to the owners of the condemned land and, at the same time, deny its validity to escape payment of complementary compensation to the tenant.
In Vestal v. Commissioner of Internal Revenue, 80 U.S.App.D.C. 264, 152 F.2d 132 (1945), shareholders took over the corporate assets on dissolution of the corporation, operated the business as a partnership and subsequently sold real estate formerly owned by the corporation. The court held that the Commissioner of Internal Revenue could not tax the shareholders as individuals on the theory that the sale was by the partnership and later assess the same persons on the theory that the sale was by the corporation in dissolution and that the shareholders were liable as transferees. [4] Staten Island Hygeia Ice & Cold Storage Co. v. United States, 85 F.2d 68 (2d Cir. 1936) was a tax case in which the court permitted a taxpayer to avoid a compromise agreement signed by the taxpayer and the Internal Revenue Service. The compromise had been signed over one and one-half years after the taxpayer (who was not represented by counsel) had been advised by the Service that the Government's claim was not barred by the statute of limitations and was enforceable. In the period between the giving of this advice and the signing of the compromise, the Supreme Court handed down a decision which had the effect of shortening the statute of limitations and thus rendered the Government's claim unenforceable. The court held that the taxpayer could and did reasonably rely upon a greater knowledge of the law on the part of the Internal Revenue Service and voided the compromise upon a showing that the Government's advice relied upon was erroneous at the time of the signing of the compromise.
The cases that plaintiffs cite are examples of the application of the doctrine of equitable estoppel to preclude a party from maintaining inconsistent positions in different lawsuits. This doctrine holds that where a party has gained from asserting a particular argument in an earlier suit and subsequently seeks to abandon that position when it would preclude recovery in another action, courts will not permit a party to discard his original theory to the detriment of an opposing party in the later suit. Jones v. Central of Georgia Railway *350 Company, 331 F.2d 649 (5th Cir. 1964); Spartans Industries, Inc. v. John Pilling Shoe Co., 385 F.2d 495 (1st Cir. 1967); National Utility Service, Inc. v. Whirlpool Corporation, 325 F.2d 779 (2d Cir. 1963); Roth v. McAllister Bros., Inc., 316 F.2d 143 (2d Cir. 1963); Matthews v. United States, 113 F.2d 452 (8th Cir.), cert. denied 311 U.S. 703, 61 S.Ct. 142, 85 L.Ed. 456 (1940).
The doctrine of equitable estoppel is not applicable to this case, because the Government did not benefit from its erroneous statement that the shareholders of Lydiade Investment Trust would be entitled to a refund of any income taxes paid by them on the receipt of deficiency dividends. In the earlier action, Lydiade prevailed on its theory that the funds paid to it by the Estate of G. A. Buder did not constitute interest income to it. The court found that Lydiade was not entitled to any refund for the $26,550 paid to its shareholders as deficiency dividends since it had not paid any tax on these amounts. Nothing in the court's opinion on this point suggests that the reference in the Government's brief to the tax treatment to Lydiade shareholders controlled the result. We find that the Government is not now estopped from claiming in this action that the 1965 deficiency dividends paid by Lydiade constituted taxable income to plaintiffs.
The court finds no merit in plaintiffs' argument that the Government's erroneous inclusion of the amounts paid by the Estate of G. A. Buder into Lydiade's income forced Lydiade to involuntarily declare deficiency dividends. Rather than pay the deficiency dividend, Lydiade could have paid the whole amount assessed as tax by the Commissioner of Internal Revenue and instituted suit to recover that amount. The choice of whether or not to take advantage of the provisions of 26 U.S.C. § 547(b) (2) rested entirely with the trust. There was no compulsion on the part of the Government.
The $18,496.50 deficiency dividends received by plaintiffs in 1965 were voluntarily paid by Lydiade out of its earnings and profits. These distributions were clearly income to plaintiffs within the meaning of 26 U.S.C. § 61(a) (7) and were includable in plaintiffs' 1965 gross income. Plaintiffs' theory of recovery, based solely upon the Government's brief and the court's opinion in the Lydiade case, is rejected. Judgment will be entered in favor of defendant.